TED N. PETTIT [4287-0]
PETTIT LAW HAWAIʻI LLLC
Pauahi Tower
1003 Bishop Street, Suite 2700
Honolulu, HI 96813
Tel.: (808) 237-2477
Email: ted@pettitlawhawaii.com

MARTIN STRATTE*
HUNTON ANDREWS KURTH LLP
50 California Street, Suite 1700
San Francisco, CA 94111-4604
Email: mstratte@hunton.com
(415) 975-3716

ANDREW J. TURNER*
KARMA B. BROWN*
TODD S. MIKOLOP*
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Email: aturner@hunton.com
Email: kbbrown@hunton.com
Email: tmikolop@hunton.com
(202) 955-1500

Counsel for Movant-Defendant-Intervenor
The Metals Company USA LLC
**Pro Hac Vice Motions to be filed*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAII**

CONSERVATION COUNCIL FOR HAWAIʻI and CENTER FOR BIOLOGICAL DIVERSITY,

Plaintiffs,

v.

NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION and DR. NEIL JACOBS, in his official capacity as Administrator of the National Oceanic and Atmospheric Administration,

Defendants, and

Civil No. CV 26-00506 DKW-KJM

**MEMORANDUM IN SUPPORT OF NON-HEARING MOTION TO INTERVENE BY THE METALS COMPANY USA, LLC; CERTIFICATE OF SERVICE**

THE METALS COMPANY USA, LLC,

Movant-Defendant Intervenor.

**MEMORANDUM IN SUPPORT OF NON-HEARING MOTION TO INTERVENE BY THE METALS COMPANY USA, LLC**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

I. BACKGROUND ........ 3

A. Statutory and Regulatory Background ........ 3

B. TMC USA's Application ........ 7

C. Plaintiffs' Challenge to NOAA's Certification ........ 9

II. ARGUMENT ........ 10

A. TMC USA Is Entitled to Intervene as of Right ........ 10

1. The Motion to Intervene is Timely. ........ 10

2. TMC USA Has a Direct and Recognized Interest in the Certification—the Subject of this Action. ........ 12

3. TMC USA's Interests May be Impaired or Impeded by the Disposition of this Litigation. ........ 15

4. The Current Parties Do Not Adequately Represent TMC USA's Interests. ........ 17

B. Alternatively, TMC USA Should Be Granted Permissive Intervention ........ 20

C. Rule 24(c) Is Satisfied ........ 21

III. CONCLUSION ........ 22

CERTIFICATE OF COMPLIANCE ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Cabinet Mountains Wilderness v. Peterson*,
510 F. Supp. 1186 (D.D.C. 1981) .......... 14

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) .......... 19

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......... 12, 13, 16, 17, 18

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) .......... 18, 19

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
172 F.3d 104 (1st Cir. 1999) .......... 20

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002) .......... 18

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) .......... 12

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc) .......... 20

*NAACP v. New York*,
413 U.S. 345 (1973) .......... 10

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
564 F.2d 381 (10th Cir. 1977) .......... 14

*Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*,
243 F.R.D. 253 (S.D.W.Va. 2007) .......... 14

*Perry v. Schwarzenegger*,
630 F.3d 898 (9th Cir. 2011) ....................15, 20

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc) ....................13, 14, 15

*Sierra Club, Inc. v. EPA*,
358 F.3d 516 (7th Cir. 2004) ....................14

*South Dakota v. Ubbelohde*,
330 F.3d 1014 (8th Cir. 2003) ....................18

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ....................20

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ....................15, 16, 17

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972)....................17

*United States v. Aerojet Gen. Corp.*,
606 F.3d 1142 (9th Cir. 2010) ....................10

*United States v. Albert Inv. Co.*,
585 F.3d 1386 (10th Cir. 2009) ....................15

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ....................11

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ....................12, 13

*WildEarth Guardians v. Salazar*,
No. 10-cv-2129-AP, 2011 WL 9284 (D. Colo. Jan. 3, 2011) ....................15

**FEDERAL STATUTES**

30 U.S.C. §§ 1401–1473....................3

30 U.S.C. § 1413(c) ....................9

## LEGISLATIVE HISTORY

Pub. L. No. 96-283, 94 Stat. 553 (1980) (codified as 30 U.S.C. §§ 1401–1473) ....................3

## FEDERAL RULES

Fed. R. Civ. P. 24(a)(2) ....................10, 12, 17, 22

Fed. R. Civ. P. 24(b)(1)(B) ....................20, 21, 22

Fed. R. Civ. P. 24(c) ....................21, 22

## FEDERAL REGULATIONS

15 C.F.R. Part 970 ....................3, 8

15 C.F.R. § 970.200 ....................3

15 C.F.R. § 970.200(d) ....................3

15 C.F.R. § 970.200(f) ....................4

15 C.F.R. § 970.201 ....................3, 4

15 C.F.R. § 970.202 ....................4

15 C.F.R. § 970.203 ....................4

15 C.F.R. § 970.203(d) ....................8

15 C.F.R. § 970.204 ....................4

15 C.F.R. § 970.205 ....................4

15 C.F.R. § 970.206 ....................4

15 C.F.R. § 970.207 ....................4

15 C.F.R. § 970.208 ....................4

15 C.F.R. § 970.209(a) ..... 4

15 C.F.R. § 970.209(b) ..... 4

15 C.F.R. § 970.209(c) ..... 4

15 C.F.R. § 970.211 ..... 4, 5

15 C.F.R. § 970.212 ..... 5

15 C.F.R. § 970.400 ..... 9

15 C.F.R. § 970.400(a) ..... 5

15 C.F.R. § 970.400(c) ..... 5

15 C.F.R. § 970.401 ..... 5

15 C.F.R. § 970.402 ..... 5

15 C.F.R. § 970.403 ..... 5

15 C.F.R. § 970.404 ..... 5

15 C.F.R. § 970.405 ..... 5

15 C.F.R. § 970.406 ..... 5

15 C.F.R. § 970.407 ..... 6

15 C.F.R. § 970.408 ..... 6

15 C.F.R. § 970.500(a)–(c) ..... 6

15 C.F.R. § 970.504 ..... 6

15 C.F.R. Part 971 ..... 3

15 C.F.R. § 971.214 ..... 3

15 C.F.R. § 971.802....................................................................................4

**FEDERAL REGISTER**

90 Fed. Reg. 60,064 (Dec. 23, 2025)..................................................................1, 9

**MISCELLANEOUS**

Pew, Fact Sheet, The Clarion-Clipperton Zone (Dec. 15, 2017), https://www.pew.org/en/research-and-analysis/fact-sheets/2017/12/the-clarion-clipperton-zone/ (last visited Nov. 17, 2026)..........................................................................................7

## INTRODUCTION

The Metals Company USA, LLC (TMC USA) moves to intervene as a defendant in this action to protect its considerable interests in its application for an exploration license under the Deep Seabed Hard Mineral Resources Act (DSHMRA) and its implementing regulations (the "Application"). Plaintiffs[1] ask this Court to find unlawful the National Oceanic and Atmospheric Administration's (NOAA) certification of TMC USA's Application, a preliminary step in the application process that does not authorize any exploration activity.

TMC USA and its corporate affiliates have invested significant time and expense, for over a decade, conducting research and developing technology that provides for safe exploration and recovery of polymetallic nodules containing critical metals from the seafloor. After completing these initial investigation activities, in 2025, TMC USA followed the procedures established by Congress in DSHMRA and NOAA's regulations to prepare and submit an application for an exploration license.

NOAA published notice of its receipt of TMC USA's Application and its determination that the Application fully complied with DSHMRA and its implementing regulations. 90 Fed. Reg. 60,064 (Dec. 23, 2025). After public comment and a hearing, on May 26, 2026, NOAA certified the Application,

[1] Plaintiffs are the Conservation Council for Hawai'i and Center for Biological Diversity.

signaling NOAA's intent to begin the detailed environmental and other reviews necessary before NOAA decides whether to issue an exploration license and on what terms. NOAA's certification of TMC USA's Application is merely an interim step in the process, confirming the Applicant's eligibility prior to NOAA's further review.

TMC USA moves to intervene in this action, pursuant to Federal Rule of Civil Procedure 24(a) and (b), to defend against Plaintiffs' challenge to NOAA's certification of its Application, including Plaintiffs' request to have the certification vacated and set aside under DSHMRA and the Administrative Procedure Act (APA). Intervention will allow TMC USA to defend its critical interests in its Application and NOAA's certification and will aid the Court in understanding the statutory and regulatory process, as well as the merits and implications of Plaintiffs' claims and requested relief.[2]

[2] Counsel conferred on this motion pursuant to Local Rule 7.8. Following a November 9, 2026, conference between counsel for Plaintiffs and counsel for TMC USA and subsequent written communications, on November 16, 2026, Plaintiffs' counsel stated they will file a response to the motion within the time permitted under the local rules. The Federal Defendants take no position on the motion.

# I. BACKGROUND

## A. Statutory and Regulatory Background

Congress enacted DSHMRA in 1980 to regulate deep sea mining activities of U.S. citizens.[3] To implement DSHMRA, in 1981, NOAA promulgated exploration regulations, 15 C.F.R. Part 970, and in 1989, the agency promulgated commercial recovery regulations, *id*. Part 971. In January 2026, NOAA issued a final rule promulgating regulations establishing procedures for consolidated exploration license and commercial recovery permit applications. *Id.* § 971.214.

NOAA's regulations establish the requirements for an application for issuance of an exploration license. *Id.* § 970.200. To assist in the development of adequate applications and "assure that applicants understand how to respond to the provisions, … NOAA [is] available for pre-application consultations with potential applicants." *Id.* § 970.200(d). An application must include: (1) information demonstrating that the financial resources of the applicant are sufficient to carry out "the exploration program set forth in the applicant's exploration plan," *id.*

[3] Pub. L. No. 96-283, 94 Stat. 553 (1980) (codified as 30 U.S.C. §§ 1401–1473). The International Seabed Authority (ISA) is an international body identified under the United Nations Convention on the Law of the Sea (UNCLOS) and a 1994 Implementation Agreement to oversee mineral-related activities on portions of the seabed beyond the jurisdiction of individual nations, including the seabed of the Clarion Clipperton Zone (CCZ). The United States has not ratified and is not a party to UNCLOS. NOAA's exploration license application process is distinct from the ISA process. Consistent with DSHMRA and DSHMRA implementing regulations, NOAA may issue an exploration license to a U.S. citizen in areas beyond national jurisdiction.

§ 970.201; (2) information sufficient to demonstrate that the technological capacity of the applicant is sufficient to carry out the exploration program in its plan, *id.* § 970.202; (3) an exploration plan describing the projected exploration activities with sufficient information for NOAA to make the necessary determinations pertaining to the certification and issue a license and to develop and enforce the terms, conditions, and restriction of a license, *id.* § 970.203; (4) an environmental and use conflict analysis, *id.* § 970.204; (5) vessel safety information, *id.* § 970.205; (6) a statement of ownership demonstrating the applicant is a U.S. citizen, *id.* § 970.206; (7) antitrust information, *id.* § 970.207; and (8) the applicable fee of $100,000, *id.* § 970.208. The regulations provide for confidential treatment of information, *id.* § 970.200(f). *See also* 15 C.F.R. § 971.802.

Priority of right for the issuance of licenses is established based on the chronological order in which exploration license applications that are deemed to be in substantial compliance are filed. *Id.* § 970.209(a). Substantial compliance is determined by NOAA based on a determination that the application contains the required information, but "does not constitute a determination on certification of the application." *Id.* § 970.209(b). NOAA notifies the applicant whether its application is in substantial compliance within 30 days of receipt. *Id.* § 970.209(c).

After receipt of the application, NOAA distributes a copy to other federal agencies with statutory responsibilities affected by the proposed activities. *Id.*

§ 970.211. NOAA also publishes a notice in the *Federal Register* that an application for an exploration license has been received and provides interested parties with the opportunity to examine materials relevant to the application and submit written comments. *Id.* § 970.212.

After determining that the application substantially complies with its regulations, NOAA makes a certification determination, which focuses on the "eligibility of the applicant." *Id.* § 970.400(a). "Certification is an intermediate step between receipt of an application for issuance … of a license and its actual issuance." *Id.* "To the maximum extent possible," NOAA "will endeavor to complete certification of an application within 100 days after submission of an application which is in full compliance. . . ." *Id.* § 970.400(c).

To certify the application, NOAA must find that the applicant: (1) will be financially responsible to meet all obligations in the exploration plan, *id.* § 970.401; (2) has the technological capability to engage in the proposed exploration, *id.* § 970.402; (3) has satisfactorily fulfilled all past obligations under any previously issued license or permit, *id.* § 970.403; (4) has an adequate exploration plan, *id.* § 970.404, with (5) an appropriate exploration size and location, *id.* § 970.405; and (6) has paid the license fee, *id.* § 970.406.

If the requirements are met, NOAA will certify the application and promptly send written notice of its determination to the applicant. *Id.* § 970.408.[4] Thereafter, NOAA will proceed to evaluate the proposal to issue a license for the exploration activities described in the application, including making necessary findings, evaluating the impacts of the proposed activities under the National Environmental Policy Act (NEPA), and proposing terms and conditions to conserve natural resources, protect the environment and the safety of life and property at sea. *Id.* § 970.500(a)–(c). Opportunities for public notice and comment and hearings occur during NOAA's evaluation of a proposal for a license. NOAA is also required to consult and cooperate with other federal agencies to assure compliance with other statutes and to find that the "exploration proposed in the application will not conflict with any international obligation of the United States." *Id.* § 970.504.

Accordingly, NOAA's certification of an application (what Plaintiffs challenge here) is merely an interim step in the comprehensive application process under DSHMRA and its implementing regulations. Certification does not conclude NOAA's review of an application, prevent further public review and comment, or—critically—authorize any exploration activity. Rather, it is simply the agency's certification that the applicant is eligible, and review of the application may

[4] If these requirements have not been met, NOAA may deny certification. 15 C.F.R. § 970.407.

proceed, including evaluation under NEPA with associated public notice and comment and consultation under Section 7 of the Endangered Species Act.

**B. TMC USA's Application**

TMC was founded in 2011 to explore the planet's largest-known deposit of battery-grade metals. Declaration of Corey McLachlan ("Decl.") ¶ 6. TMC plans to develop critical metals from seafloor polymetallic nodules, on a dual mission to: (1) supply metals for energy, defense, manufacturing and infrastructure with net positive impacts compared to conventional production routes, and (2) trace, recover and recycle the metals to help create a metal commons that can be used in perpetuity. *Id.*

In the 1970s, four international consortia, which included U.S. companies, began exploring and testing systems to collect polymetallic nodules from the CCZ to assess the commercial viability of the resource.[5] *Id.* ¶ 8. Polymetallic nodules, also called manganese nodules, contain four essential critical metals—cobalt, nickel, copper and manganese—as well as concentrations of rare earths, in a single ore. *Id.* ¶ 7. These nodules form through the precipitation of metals from seawater and pore water (the natural binding of metals within the deep ocean), ultimately resting unattached on the abyssal seafloor. *Id.* Initial tests in the CCZ suggested

[5] The CCZ is an approximately 4.5 million km$^2$ area located between Hawaiʻi and Mexico. Pew, Fact Sheet, The Clarion-Clipperton Zone (Dec. 15, 2017), https://www.pew.org/en/research-and-analysis/fact-sheets/2017/12/the-clarion-clipperton-zone/ (last visited Nov. 17, 2026).

that nodules could be collected and processed to produce usable metals with then-available technology. *Id.* ¶ 8.

Over the past decade, TMC and its corporate affiliates have completed extensive research into the environmental and social impacts of offshore nodule collection and onshore processing in the CCZ in advance of exploring for and recovering polymetallic nodules containing critical minerals. *Id.* ¶ 12. Following these activities, TMC USA engaged in pre-application consultation with NOAA, and, on April 28, 2025, submitted an application for a license to explore a 121,830.2 $km^2$ area in the CCZ designated as TMC USA-B.[6] *Id.* ¶¶ 18-19. On May 28, 2025, NOAA notified TMC USA in writing that the application was in substantial compliance with 15 C.F.R. Part 970, Subpart B, and identified items to be addressed to achieve full compliance. *Id.* ¶ 19.

On July 28, 2025, TMC USA submitted an amended Application for TMC USA-B. *Id.* The Application is a comprehensive, 298-page submission, supported by thirteen appendices that provides all information required, under the regulations, for NOAA to certify the Application. *Id.* ¶¶ 21-22. For example, the Application details the company's financial resources, *id.* ¶ 24, its technological capability to carry out the exploration plan, *id.* ¶ 25, provides a use-conflict

[6] TMC USA-B comprises six non-contiguous blocks that together constitute a logical mining unit, 15 C.F.R. § 970.203(d), in areas beyond national jurisdiction in the CCZ. Decl. ¶ 20 and Fig. 1.

analysis, *id.* ¶ 26, details a multi-phase ten-year exploration plan, *id.* ¶¶ 28-32, and provides information on vessel safety, certification and observer requirements, *id.* ¶¶ 33-35.

On December 23, 2025, NOAA published notice in the *Federal Register* that it received TMC USA's USA-B amended exploration license Application on July 28, 2025, and determined the Application to be "fully compliant" with DSHMRA and its implementing regulations. 90 Fed. Reg. 60,064 (Dec. 23, 2025). NOAA provided an opportunity for public comment and held virtual public hearings. Decl. ¶ 40. On May 26, 2026, NOAA certified the Application. *Id.* ¶ 41. That certification—issued by NOAA under DSHMRA § 1413(c) and 15 C.F.R. § 970.400—is challenged by Plaintiffs in this case.

**C. Plaintiffs' Challenge to NOAA's Certification**

Plaintiffs raise one claim in their Complaint. They argue that NOAA's certification of TMC USA's Application violates the APA and was not in accordance with DSHMRA or its implementing regulations. ECF No. 1 ¶ 88. Plaintiffs ask the Court to declare that NOAA's certification of TMC USA's Application violates DSHMRA, its implementing regulations, and the APA; to hold unlawful and set aside NOAA's certification; to issue appropriate injunctive relief; and to maintain jurisdiction over this action until NOAA "complies with DSHMRA, the APA, and every order of this Court." ECF No. 1, Prayer for Relief.

## II. ARGUMENT

### A. TMC USA Is Entitled to Intervene as of Right

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court *must permit* anyone to intervene" who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010). In determining whether intervention is appropriate, the Ninth Circuit is "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Aerojet Gen. Corp.*, 606 F.3d at 1148 (internal quotation marks and citation omitted). TMC USA satisfies each of the requirements under Rule 24(a)(2). Accordingly, TMC USA respectfully requests the Court grant intervention as of right.

#### 1. The Motion to Intervene is Timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances" of the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). In evaluating the timeliness of a motion to intervene, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other

parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (internal quotation marks and citation omitted). TMC USA's motion to intervene is timely, and TMC USA plans to work collaboratively and efficiently with the other parties.

Plaintiffs filed their complaint on September 30, 2026, ECF No. 1, and a motion for leave to file a supplemental complaint on November 16, 2026. ECF No. 15. TMC USA worked promptly to file this intervention motion to defend its interests. The litigation is at a very early stage. The Federal Defendants' response to the Complaint is not yet due. In Plaintiffs' motion for leave to file a supplemental complaint, Plaintiffs state that "[t]he parties have agreed to allow Defendants 30 days to respond to the supplemental complaint." *Id.* at 1. The Court has not ruled on any dispositive matter. Scheduling conference statements are due on January 14, 2027, and an initial scheduling conference will be held on January 21, 2027. ECF No. 16. The merits of Plaintiffs' challenge to the certification may only be decided based on the administrative record, which has not yet been lodged with the Court. If granted intervention, TMC USA proposes to file its responsive pleading consistent with the deadline for the Federal Defendants' responsive pleading and LR 7.8, or on such other date as the Court deems appropriate. TMC USA is further prepared to comply with any established scheduling deadlines negotiated by the parties or imposed by the Court.

The Ninth Circuit has found intervention to be timely when proposed intervenors filed under similar circumstances. *See*, *e.g.*, *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (noting that intervention motion was timely when filed "only approximately one and [a] half months after the suit was filed"); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (permitting intervention when the "very early" motion was submitted four months after filing of the action, two months after defendants filed an answer and submitted the administrative record, and "before any hearings or rulings on substantive matters"). Under these circumstances, TMC USA's motion is timely and allowing intervention at this early stage in the proceedings will not delay this action or unfairly prejudice the parties. In fact, TMC USA's participation will likely aid the Court in its consideration of this matter by presenting a perspective on the certification, the administration record, and applicable law not otherwise provided by the existing parties.

### 2. TMC USA Has a Direct and Recognized Interest in the Certification—the Subject of this Action.

To intervene as of right, a movant must have an "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Whether a movant has "a significant protectable interest in the action" "is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d

893, 897 (9th Cir. 2011) (citation omitted). The movant need only "establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* "The relationship requirement is met 'if the resolution of the plaintiff's claims actually will affect the [movant].'" *City of Los Angeles*, 288 F.3d at 398 (citation omitted).

Here, NOAA's certification of TMC USA's Application is the subject of this action. TMC USA, accordingly, has a direct and substantial interest in the outcome of this action, because, among other things, Plaintiffs seek to set aside the certification. The certification is an interim step in the comprehensive application process. Certification does not authorize any exploration activity, but it signals the completion of the application submission stage, and NOAA's progression to environmental and other reviews that will ultimately lead to a decision by NOAA whether to issue a license and on what terms. If the Court were to hold unlawful and set aside the certification, in whole or in part, TMC USA would face substantial, concrete and largely irreversible harms. Decl. ¶¶ 46-48, 50-55 (detailing harms TMC USA would face from any adverse decision in this case).

Entities holding federal permits are routinely granted intervention in actions challenging those permits. *See, e.g.*, *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993) (CWA permit holder entitled to intervene as a matter of right), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d

1173 (9th Cir. 2011) (en banc); *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004) (finding that holder of permit authorizing coal-fired power plant construction has legally protectable interest in challenge to plant's authorization); *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977) (reversing denial of intervention to motor vehicle common carriers based on risk that suit would set aside regulatory scheme that "directly protects their economic interests"); *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 255 (S.D.W.Va. 2007) (mining companies holding Corps permits permitted to intervene as a matter of right); *Cabinet Mountains Wilderness v. Peterson,* 510 F. Supp. 1186 (D.D.C. 1981) (holder of drilling permit allowed to intervene in challenge to Forest Service approval of exploratory plan). An entity subject to a certification of its application in the midst of the permitting process plainly holds a similar legally protected interest.

Moreover, TMC USA also has a direct financial interest in this litigation that entitles it to intervention. Since 2025, TMC USA has incurred expenses in excess of $1 million to prepare and submit its Application, and its related entities have committed substantial additional resources. Decl. ¶¶ 46-47. In addition, TMC USA continues to incur expenses associated with NOAA's evaluation of its exploration license Application. *Id.* ¶ 48. "[T]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest" to warrant

intervention. *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1393 (10th Cir. 2009) (internal quotation marks and citation omitted); *see also WildEarth Guardians v. Salazar*, No. 10-cv-2129-AP, 2011 WL 9284, at *2 (D. Colo. Jan. 3, 2011) (granting intervention to owners of numerous oil and gas leases due to their economic interest); *Sierra Club*, 995 F.2d at 1483.

If Plaintiffs' requested relief is granted, and NOAA's certification of TMC USA's Application is held unlawful and set aside, TMC USA would face significant economic injury and other harms, including potentially the requirement that NOAA redo some or all of the steps required for a certification, delaying NOAA's review of TMC USA's Application at each stage, with corresponding financial harms to the company. Decl. ¶ 51. In sum, TMC USA has substantial interests that are directly implicated by Plaintiffs' lawsuit.[7]

#### 3. TMC USA's Interests May be Impaired or Impeded by the Disposition of this Litigation.

Courts in this circuit adhere to "the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be

[7] Although TMC USA is not required to separately demonstrate standing to participate as a defendant-intervenor, *see Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam), TMC USA's interests in the certification, and the impairment TMC USA would suffer if Plaintiffs prevail, easily satisfy any standing requirement. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001).

entitled to intervene.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted). Impairment is routinely found when the movant has "a significant protectable interest"—in those circumstances, courts have "little difficulty concluding that the disposition of th[e] case *may*, as a practical matter, affect" the movant. *Citizens for Balanced Use*, 647 F.3d at 898 (emphasis added) (internal quotation marks and citation omitted).

Here, it is readily apparent that, if NOAA's certification is found unlawful, TMC USA's interests could be substantially impaired or impeded. A court order holding unlawful and setting aside NOAA's certification of TMC USA's Application could require NOAA to recomplete some or all of the steps leading to a new certification, or otherwise delay the progress TMC USA has made in its Application to NOAA and all further steps that remain in the process before any license may issue. Decl. ¶ 51.

And there would be broader harms. The Application reports approximately 1,023 million wet tons of SEC S-K 1300-compliant nodule resources in the TMC USA-B area, plus an estimated 105 million tons of exploration upside in the open areas of blocks B-E and B-F. *Id.* ¶ 54. Together, these areas contain approximately 10.3 million tons of nickel, 8.6 million tons of copper, 1.7 million tons of cobalt and 228 million tons of manganese—critical minerals that TMC USA's Application identifies as available for U.S. domestic use. *Id.* Setting aside the

certification would delay the entire domestic supply chain that those resources represent. *Id.*

#### 4. The Current Parties Do Not Adequately Represent TMC USA's Interests.

TMC USA has significant protectable interests that may be impaired by the disposition of this litigation, and thus, the right to intervene as long as its interests *may* not be adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). Adequacy of representation is determined by

> examin[ing] three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."

*Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). Only a "'minimal'" showing is required to establish this element of the legal standard for intervention by right under Rule 24(a)(2). *Id.*; *see also Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972).

In cases like this—where TMC USA seeks to intervene on the same side as the government—the Ninth Circuit permits a private party to intervene even when the government and private party desire the same outcome. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. This is so because "the government's representation of the public interest may not be identical to the individual parochial interest of a

particular group" notwithstanding that "both entities occupy the same posture in the litigation." *Citizens for Balanced Use*, 647 F.3d at 899 (internal quotation marks and citations omitted).

The existing parties do not adequately represent TMC USA's interests. Although the Federal Defendants generally may share TMC USA's desire to defend the certification, the broad balance of environmental, administrative, public, and other interests the government must consider in addressing the claims differs markedly from TMC USA's specific interests in protecting its application rights, economic interests, and long-term investment in the exploration activities. As a result, the positions the Federal Defendants may take during the litigation (or any settlement discussions) will neither necessarily align with the positions that TMC USA would take, nor adequately represent TMC USA's interests. *See, e.g.*, *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025-26 (8th Cir. 2003) (in suit challenging Corps policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors—downstream users—because Corps was required to balance the interests of the upstream and downstream users); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("a federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of [an] entity with an economic interest[] in the use of that resource") (citation omitted); *Conservation Law Found. of New England,*

*Inc. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992) ("governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity").

Put simply, the Federal Defendants' primary interests in this case are to defend NOAA's administrative and permitting policies and procedures and its resources. The Federal Defendants do not have any particular stake in protecting TMC USA's rights and expectations in the certification or license application, and may be constrained by federal policy or litigation strategy from making certain arguments. *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (recognizing the different, narrower interests of a private intervenor and the more general interests of the public at large). Moreover, NOAA would not face the same consequences TMC USA would face if the certification is declared unlawful.

Lastly, TMC USA has a direct, substantial, and focused interest in any settlement negotiations that may result from this litigation that the other parties do not share, and TMC USA may have an interest in appealing an adverse decision that the existing parties may not share. Given the genuine potential for divergence of interests, it is clear that representation by existing parties *may* be inadequate and, as a result, TMC USA is entitled to intervene as of right.

### B. Alternatively, TMC USA Should Be Granted Permissive Intervention

Although TMC USA is entitled to intervene as of right under Rule 24(a)(2), in the alternative, the Court should permit TMC USA to intervene under Rule 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may exercise its discretion to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Perry*, 630 F.3d at 905. This Court has broad discretion to grant permissive intervention. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc).

In deciding whether to allow intervention under Rule 24(b)(1)(B), the Court may consider any number of factors, *see Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977), but intervention should generally be permitted when the movant (1) asserts an interest related to the agency rule in dispute, and (2) defenses that respond directly to the plaintiff's claim for relief. *Kootenai Tribe*, 313 F.3d at 1110. "The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999).

Permissive intervention is warranted here. Plaintiffs seek to have the certification for TMC USA's application declared unlawful. The defenses TMC USA would assert would be based on the administrative record to be filed by the Federal Defendants, present questions of law and fact in common with the underlying suit and respond directly to Plaintiffs' claims. Moreover, given the unique perspective of TMC USA, as the applicant for the license, the certification of which has been challenged (a perspective not shared by any other party to the suit), and its extensive reliance interests, TMC USA's participation would likely aid or enhance the Court's understanding of the case, its consideration of the merits and the implications of Plaintiffs' claim and requested relief, and thereby assist in the equitable resolution of this action.

Finally, TMC USA's motion to intervene is timely. If granted intervention, TMC USA would expect to participate on the same schedule established for the existing parties. As a result, its intervention will not delay the litigation.

Taken together, these considerations clearly support TMC USA's alternative request for permission to intervene under Rule 24(b)(1)(B).

### C. Rule 24(c) Is Satisfied

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which

intervention is sought." Fed. R. Civ. P. 24(c). Through this memorandum, TMC USA has stated its grounds for intervention.

Plaintiffs' complaint was filed on September 30, 2026, ECF No. 1, and Plaintiffs filed a motion for leave to file a supplemental complaint on November 16, 2026. ECF No. 15. The Federal Defendants' response to the Complaint is not yet due. In Plaintiffs' motion for leave to file a supplemental complaint, Plaintiffs state that "[t]he parties have agreed to allow Defendants 30 days to respond to the supplemental complaint." *Id.* at 1. TMC USA, if granted intervention, proposes to file its responsive pleading consistent with the deadline for the Federal Defendants' responsive pleading and LR 7.8, or on such other date as the Court deems appropriate. TMC USA's proposed responsive pleading is not intended to disrupt the deadline for filing of the Federal Defendants' responsive pleading.

## III. CONCLUSION

TMC USA respectfully requests that this Court grant its motion to intervene as of right under Rule 24(a)(2), or alternatively, permissive intervention under Rule 24(b)(1)(B).

DATED: Honolulu, Hawaii, November 20, 2026.

*/s/ Ted N. Pettit*

TED N. PETTIT
MARTIN STRATTE *(Pro Hac Vice Pending)*
ANDREW J. TURNER *(Pro Hac Vice Pending)*
KARMA B. BROWN *(Pro Hac Vice Pending)*
TODD S. MIKOLOP *(Pro Hac Vice Pending)*

Attorneys for Movant-Defendant-Intervenor
THE METALS COMPANY USA, LLC

## **CERTFICATE OF COMPLIANCE**

This document complies with the page and word limits of Local Rule 7.4(a) and (b) because, excluding the parts of the document exempted by Local Rule 7.4(d), it contains 5,055 words according to the word count feature of Microsoft 360.

DATED: Honolulu, Hawaii, November 20, 2026.

*/s/ Ted N. Pettit*
TED N. PETTIT
MARTIN STRATTE *(Pro Hac Vice Pending)*
ANDREW J. TURNER *(Pro Hac Vice Pending)*
KARMA B. BROWN *(Pro Hac Vice Pending)*
TODD S. MIKOLOP *(Pro Hac Vice Pending)*

Attorneys for Movant-Defendant-Intervenor
THE METALS COMPANY USA, LLC